## JONÈS *v.* UNITED STATES.

1. In an executory contract for the manufacture of goods, and their delivery on a specified day, no right of property passes to the vendee; and, time being of the essence of the contract, he is not bound to accept and pay for them, unless they are delivered or tendered on that day.
2. The court below having found that the goods had not been delivered or tendered at the stipulated time, nor an extension of time for the performance of the contract granted, and there being nothing in the case to warrant the contractor in assuming that any indulgence would be allowed, the United States was not estopped from setting up that when the goods were tendered the contract was at an end.

APPEAL from the Court of Claims.
The facts are stated in the opinion of the court.

*Mr. James Lowndes*, for the appellant.
*The Solicitor-General, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.
Time is usually of the essence of an executory contract for the sale and subsequent delivery of goods, where no right of property in the same passes by the bargain from the vendor to the purchaser; and the rule in such a case is, that the purchaser

is not bound to accept and pay for the goods, unless the same are delivered or tendered on the day specified in the contract. Addison, Contr. 185; *Gath* v. *Lees*, 3 H. & C. 558; *Coddington* v. *Paleologo*, Law Rep. 2 Exch. 196.

Articles of agreement were made June 1, 1864, between an assistant-quartermaster of the army and the petitioner, who contracted to manufacture and deliver at the clothing depot of the army in Cincinnati, by or before the 15th of December then next, two hundred thousand yards of dark-blue uniform-cloth; and it was agreed that deliveries under the contract should be made as follows: five thousand yards in June, twenty-five thousand yards in July, twenty-five thousand yards in August, thirty-five thousand yards in September, fifty thousand yards in October, fifty thousand yards in November, and ten thousand yards on or before the 15th of December in the same year.

Other persons were interested with him in the contract at the time it was made; but one after another retired, until the petitioner is the only one that retains any interest. His claim is fully set forth in his petition.

Certain instalments of the cloth were delivered, for which the United States paid the contract price, excepting ten per cent reserved by the United States, pursuant to the written contract. Neither party complains of any default prior to August of that year, when the mill in which the cloths were manufactured was destroyed by fire, and the petitioner, in consequence of the loss, failed to make the deliveries of the cloth as the contract required; and the assistant-quartermaster called his attention to the fact, and notified the sureties that he should proceed against their principal for his delinquency.

Unable to fulfil the terms of the contract, he applied by letter to the person in charge of the depot to be released from the obligation, and for the payment of the reserved ten per cent. Being unsuccessful in that application, he visited Washington, for the purpose of applying to the department to be released from the unfinished part of his contract; and with that view sought an interview with the quartermaster-general, who referred him to the head of the bureau of clothing, where he was told that there was no power out of Congress to release him,

and that he must furnish the goods.. Had the conversation between the parties stopped there, the case would be destitute of any color of equity; but the finding of the court below shows that the head of the bureau remarked, that, upon application to the assistant-quartermaster, sufficient time would be allowed to deliver the goods.

Though told. that there was no power out of Congress to release him from his contract, he procured the necessary quantity of such cloth to be manufactured, and applied by letter to the assistant-quartermaster for leave to complete the contract, who referred the letter to the quartermaster-general for decision; and his reply to the petitioner, as given in the findings, was, that he could not authorize the release from contracts, nor the extension of time for the delivery of articles under a contract, nor any action whatever not in accordance with their terms and conditions.

Prices in the market fell one-half; but the petitioner tendered the cloths to the assistant-quartermaster, who refused to receive the same, because the time for deliveries under the contract had passed.

Damages are claimed by the petitioner, upon the ground that the time for the delivery of the cloths, as specified in the contract, was extended: but the Court of Claims decided that the theory of fact involved in the defence was not proved; that the remarks of the head of the bureau of clothing were not sufficient to support that theory, as they might not imply any thing more than the opinion of that officer as to what the assistant-quartermaster would do.

The petition having been dismissed, due appeal was taken by the petitioner; and he assigns the following errors: 1. That the court erred in holding that time was of the essence of the written contract. 2. That the court erred in deciding that there was not a valid extension as to the time for delivering the cloths. 3. That the court erred in overruling the proposition of the petitioner, that the United States were estopped from .denying the existence of the contract when the goods were.tendered. 4. That the court erred in holding that there was not a new contract; and that such new contract was void because not in writing.

Whether one promise be the consideration for another, or whether the performance, and not the mere promise, be the consideration, is to be determined by the intention and meaning of the parties, as collected from the instrument, and the application of good sense and right reason to each particular case.   Instructive rules for the accomplishment of that purpose have been stated in various decisions of the court and in treatises of high authority, some few of which may be consulted in this case to advantage.   Chitty, Contr. 668.

Where an act is to be performed by the plaintiff before the accruing of the defendant's liability under his contract, the plaintiff must prove either his performance of such condition precedent, or an offer to perform it which the defendant rejected, or his readiness to fulfil the condition until the defendant discharged him from so doing, or prevented the execution of the matter which the contract required him to perform.   For, where the right to demand the performance of a certain act depends on the execution by the promisee of a condition precedent or prior act, it is clear that the readiness and offer of the latter to fulfil the condition, and the hindrance of its performance by the promisor, are in law equivalent to the completion of the condition precedent, and will render the promisor liable upon his contract.   *Graves* v. *Legg*, 9 Exch. 709; *Morton* v. *Lamb*, 7 Term, 125; 2 Wms. Saund. 352 *b;* 2 Smith, Lead. Cas. 13.

Well-considered authorities everywhere agree that a contract may be so framed that the promises upon one side may be dependent upon the promises upon the other; so that no action can be maintained, founded on the written contract, without showing that the plaintiff has performed, or at least has been ready, if allowed by the other party, to perform, his own stipulations, which are a condition precedent to his right of action: nor is it necessary to enter into much discussion in this case to prove that the described instalments of clothing were required, by the true intent and meaning of the parties, as expressed in the written contract, to be delivered at the time and place therein specified and set forth, as the manifest purpose and object of the contract was to procure necessary supplies of clothing for an army in the field.

None will pretend that any right of property in the clothing passed to the United States by the bargain between the parties; and the rule in such cases is, that time is and will be of the essence of the contract, so long as the contract remains executory, and that the purchaser will not be bound to accept and pay for the goods, if they are not delivered or tendered on the day specified in the contract.   Addison, Contr. 185.

Suppose that is so, still it is contended by the petitioner that the time of performance was extended by the remarks of the head of the bureau of clothing when the contractor applied to be released from the obligation to complete the unfinished part of his contract; but the court is unable to concur in that proposition.   The finding of the court below shows that no such extension was ever made.

Conditions precedent may doubtless be waived by the party in whose favor they are made; but the findings of the court below do not afford any ground to support any such theory. Cases arise where either party, in case of a breach of the contract, may be compensated in damages; and in such cases it is usually held that the conditions are mutual and independent: but where the conditions are dependent and of the essence of the contract, it is everywhere held that the performance of one depends on the performance of another, in which case the rule is universal, that, until the prior condition is performed, the other party is not liable to an action on the contract.   Addison, Contr. 925.

Where time is of the essence of the contract, there can be no recovery at law in case of failure to perform within the time stipulated.   *Slater* v. *Emerson*, 19 How. 224.

Additional authorities to show that a party bound to perform a condition precedent cannot sue on the contract without proof that he has performed that condition, is scarcely necessary, as the principle has become elementary.   *Governeur* v. *Tillotson*, 3 Edw. (N. Y.) Ch. 348.

Conditions, says Story, may be either precedent or subsequent, but a condition precedent is one which must happen before either party becomes bound by the contract.   Thus, if a person agrees to purchase a cargo of a certain ship at sea, provided the cargo proves to be of a particular quality, or pro-

vided the ship arrives before a certain time, or at a particular port, each proviso is a condition precedent to the performance of such a contract; and unless the cargo proves to be of the stipulated quality, or the ship arrives within the agreed time or at the specified port, no contract can possibly arise. Story, Contr. 33.

Impossible conditions cannot be performed; and if a person contracts to do what at the time is absolutely impossible, the contract will not bind him, because no man can be obliged to perform an impossibility; but where the contract is to do a thing which is possible in itself, the performance is not excused by the occurrence of an inevitable accident or other contingency, although it was not foreseen by the party, nor was within his control. Chitty, Contr. 663; *Jervis* v. *Tompkinson,* 1 H. & N. 208.

Other defences failing, the petitioner insists that the United States are estopped to deny that the time of performance was extended, as set up in his second assignment of error; but the court is unable to sustain that proposition, as the remark of the head of the bureau does not amount to a contract for such an extension, being nothing more than the expression of an opinion that the assistant-quartermaster would grant the applicant some indulgence.

Viewed in that light, it is clear that the United States did not do any thing to warrant the contractor in changing his position, and, if not, then it is settled law that the principle of estoppel does not apply. *Packard* v. *Sears,* 8 Ad. & E. 474; *Freeman* v. *Cook,* 2 Exch. 654; *Foster* v. *Dawber,* 6 id. 854; *Edwards* v. *Chapman,* 1 Mee. & W. 231; *Swain* v. *Seamens,* 9 Wall. 254.

Estoppel does not arise in such a case, unless the party for whom the service is to be performed induced the other party by some means to change his position and act to his prejudice in consequence of the inducement; but in the case before the court, the remark made by the head of the bureau was not of a character to warrant the petitioner to assume that it was agreed that any such indulgence would be given. Benjamin, Sales, 45; *United States* v. *Shaw,* 1 Cliff. 310.

Conclusive evidence that the time of performance had ex-

pired is found in the findings of the court, and the petitioner failing to establish his theory that the time of performance had been extended, it is clear that there is no error in the record.

*Judgment affirmed.*