## UNITED STATES *v.* SOUTHERN PACIFIC RAILROAD COMPANY.

## SOUTHERN PACIFIC RAILROAD COMPANY *v.* UNITED STATES.

**APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.**

Nos. 128, 129.   Argued January 26, 1912.—Decided February 26, 1912.

An indemnity grant, like the residuary clause in a will, contemplates the uncertain and looks to the future, and what the party entitled may elect to select depends upon the state of the lands at the time of selection.   *Ryan* v. *Railroad Company,* 99 U. S. 382.

Under the main line grant made to the Southern Pacific Railroad Company by the act of July 27, 1866, c. 278, § 18, 14 Stat. 292, the company can select lieu lands within the primary limits of the grant made to the Atlantic & Pacific Railroad Company by § 3 of

.the same act and forfeited under the act of July 6, 1886, c. 637, 24 Stat. 123. *Southern Pacific Railroad Company* v. *United States,* 168 U. S. 1, distinguished.

Where selections are made after a decision of this court, the selections will not be declared illegal at the instance of the Government if its claim is inconsistent with the position taken by it in the earlier case.

THE facts, which involve rights of the Southern Pacific 'Railroad Company under its Main Line Grant to lands within the overlap of the primary limits of the Atlantic and Pacific Railroad Company land grant, are stated in the opinion.

*The Solicitor General* for the United States:

As to No. 128, the Southern Pacific is not entitled to select, as being within the indemnity provisions of its Main Line Grant made by the act of July 27, 1866, any lands which were subject to the primary provisions of the Atlantic and Pacific grant (made by the same act).

This question is really *res judicata.* See 168 U. S. 1, 61.

Other cases clearly sustain the principle underlying this decision. *Bardon* v. *Northern Pacific R. R. Co.,* 145 U. S. 535, 545; *Sioux City & St. P. R. R. Co.* v. *United States,* 159 U. S. 349, 364; *Chicago &c. Ry. Co.* v. *United States,* 159 U. S. 372, 374; *St. Paul Railroad Co.* v. *Winona Railroad Co.,* 112 U. S. 720, 732; *Clark* v. *Herington,* 186 U. S. 206.

Selections for the lands in Exhibit B to the bill are now pending in the Interior Department, but the Land Department has no power, jurisdiction, or discretion which it can exercise in approving them, and therefore this suit to quiet title and remove the cloud will lie. *Mullan* v. *United States,* 118 U. S. 271, 278; *Burfenning* v. *Chicago &c. Ry.,* 163 U. S. 321, 323; *Doolan* v. *Carr,* 125 U. S. 618, 624; *Weeks* v. *Bridgman,* 159 U. S. 541, 547.

The Government is entitled to a decree for the price

UNITED STATES *v.* SOUTHERN PAC. R. R. CO. 567

223 U. S.    Argument for Appellees in No. 128; Appellants in No. 129.

(at the rate of $1.25 per acre) of such of the patented lands as have been sold to *bona fide* purchasers. *Southern Pacific Railroad Co.* v. *United States*, 200 U. S. 341; *Oregon Railroad Co.* v. *United States*, 189 U. S. 103, 115.

It appears by stipulation that within the indemnity limits there still remains a large body of lands from which the company can select in lieu of those here involved. *Southern Pacific* v. *United States* (No. 1), 200 U. S. 341, 353.

As to No. 129, the former case is a conclusive adjudication against the defendants as to lands there and here involved. *Southern Pacific* v. *United States*, 183 U. S. 519; *United States* v. *Southern Pacific*, 184 U. S. 49.

The title to such of the lands in Exhibit B of the bill as were included in the former case is *res judicata*. It is immaterial that the right now asserted was not asserted then. The bill was to quiet title and the right now relied on should have been put forward at the time, as it could have been. The object of the rule is to end litigation. See *United States* v. *California &c. Land Company*, 192 U. S. 355; *Bienville Water Supply Co.* v. *Mobile*, 186 U. S. 212, 216; *Dowell* v. *Applegate*, 152 U. S. 327, 341.

The defendant company cannot contend that this effect of the decision is avoided for the reason that by the subsequent selection under the act of 1866, which was not in question in the case, it acquired a new title. Selection may be necessary to perfect title, but the right, of course, always comes from the granting act. That right could have been urged then as well as now.

*Mr. Maxwell Evarts* for appellees in No. 128 and appellants in No. 129:

The filing of a suit by the Government to quiet the title to lands in so far as any claim is made thereto by the railroad company under the branch line grant of 1871, does not bar the selection of such lands by the railroad

company under the grant of 1866, simply because the indemnity limits of the two grants overlapped to a slight extent, and, unknown to either side at the time of the trial, land physically within the indemnity limits of the grant of 1866 was in its character of indemnity land under the grant of 1871 included in such suit. See *Southern Pacific Railroad Co.* v. *United States*, 183 U. S. 519, 532, stating what was decided by the court in 146 U. S. 570, 146 U. S. 615, and 168 U. S. 1.

The doctrine that the title to indemnity lands remains in the United States until selection and approval has always been recognized by this court. *New Orleans Pacific Railway* v. *Parker*, 143 U. S. 42, 57; *United States* v. *Missouri &c. Ry.*, 141 U. S. 358, 374; *Wisconsin Railroad* v. *Price County*, 133 U. S. 496, 512; *Barney* v. *Winona &c. R. R.*, 117 U. S. 228, 232; *Clark* v. *Herington*, 186 U. S. 206, 209.

The whole question in this case is whether such general principles of law are applicable to the facts in the case at bar. They are not for two reasons.

First: Because at the time the suit, in 168 U. S. 1, was brought and until it was finally disposed of in this court, there was no claim of title in the Southern Pacific to the lands involved here under the Main Line Grant of 1866, and no claim of title thereto was obtained until 1903. *Barrow* v. *Kindred*, 4 Wall. 399, 404.

Second: For the reason that in a suit brought by the Government to quiet its title to lands claimed by the defendants under a particular grant of Congress it is not open to such defendants to assert any claim to the land under another grant, especially when a contemporary suit is brought to quiet its title to the same lands with regard to any claims under such other grant. The Government, therefore, by reason of the position taken by it in 168 U. S. 1, with reference to the Main Line Grant of 1866 and because of the fact that it had brought a suit to quiet

title to these very same lands with regard to claims thereto of the railroad company under the Main Line Grant of 1866, is certainly now estopped and barred from making the claim that the case in 168 U. S. 1, is a sufficient ground for holding that the railroad company cannot claim these lands under its indemnity grant under the Main Line Grant of 1866.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill brought by the United States to quiet title and cancel patents, and for an accounting, as to lands lying within the indemnity limits of the grant made to the Southern Pacific Railroad Company by the act of July 27, 1866, c. 278, § 18, 14 Stat. 292, known as the Main Line Grant, and within the primary limits of the grant made to the Atlantic and Pacific Railroad Company by § 3 of the same act. The Atlantic and Pacific road forfeited its grant, (act of July 6, 1886, c. 637, 24 Stat. 123), and thereafter the Southern Pacific selected the parcels in question as indemnity under its Main Line Grant. The rights of the Southern Pacific under this grant were not subordinated to those of the Atlantic and Pacific under the same statute, as they were by its branch line grant of 1871, considered in our last decision, but in case of conflict each road took half within the conflicting place limits. *Southern Pacific Railroad Co.* v. *United States*, 183 U. S. 519. The special grounds for the decision between the same parties in 168 U. S. 1, followed in the case preceding this, do not exist here. Therefore the Circuit Court and the Circuit Court of Appeals held that the state of the lands at the time of selection determined the right, with an accidental exception that we shall explain. 152 Fed. Rep. 303. 167 Fed. Rep. 510. 93 C. C. A. 146. Both parties appeal; the United States from the

decision on the main point, the Southern Pacific. from what concerns the excepted lands. .

The Government argues that as the lands selected lay within the primary limits of the Atlantic and Pacific they cannot have been contemplated as possibly falling into the indemnity lands of the other road. It refers to an intimation in *Southern Pacific Railroad Company* v. *United States*, 189 U. S. 447, 452, made with regard to the branch line grant and to lands within the place limits of the Southern Pacific but for the paramount right of the Texas Pacific, that as the indemnity grant was 'not including the reserved numbers' 'it might be argued' that those words excluded the secondary claim to the same lands by way of indemnity after a forfeiture of the Texas Pacific grant. It suggests that *Ryan* v. *Railroad Company*, 99 U. S. 382, relied on for the ground of decision below, concerned land which the United States was claiming at the time of the indemnity grant and which it ultimately acquired, and that its authority should be limited to such a case. But we are of opinion that these arguments ought not to prevail.

An indemnity grant, like the residuary clause in a will, contemplates the uncertain and looks to the future. What a railroad is to be indemnified for may be fixed as of the moment of the grant, but what it may elect when its right to indemnity is determined depends on the state of the lands selected at the moment of choice. Of course the railroad is limited in choosing by the terms of the indemnity grant, but the so-called grant is rather to be described as a power. Ordinarily no color of title is gained until the power is exercised. When it is exercised in satisfaction of a meritorious claim which the Government created upon valuable consideration and which it must be taken to have intended to satisfy (so far as it may be satisfied within the territorial limits laid down), it seems to us that lands within those limits should not be excluded simply

because in a different event they would have been subject to a paramount claim. It seems to us, in short, that *Ryan* v. *Railroad Company, supra,* should be taken to establish a general principle and should not be limited to its special facts. As to the suggestion in 189 U. S. 447, 452, the words 'not including the reserved numbers' refer primarily at least to the numbers reserved from any part of the grant by the terms of the act, and the suggestion was made only as to a claim of indemnity from lands in and adjoining a strip to which the title under the primary grant failed. Whether there was anything in it in any aspect we need not consider now. It certainly cannot affect this case.

A more delicate question is presented by the appeal of the Southern Pacific. It is this: A part of the lands in controversy were not only within the main line indemnity limits of the Southern Pacific and the primary limits of the Atlantic and Pacific, but also within the indemnity limits of the Southern Pacific branch line grant. It is agreed that they were embraced in the decree against the right of the Southern Pacific under its branch line grant in 168 U. S. 1, and the argument is that the matter is *res judicata,* on the ground that a decree. or judgment is binding as to all *media concludendi,* and that the former decree established the right of the United States to this land. *Dowell* v. *Applegate,* 152 U. S. 327; *United States* v. *California and Oregon Land Co.,* 192 U. S. 355, 358. But the selections in this case were made after the decree in 168 U. S. 1, and if the matter were at large it would seem a strong thing to hold an adjudication conclusive not only as to existing titles under the grant in controversy, but as to merely possible sources of title in the future under a different and distinct grant. We shall not discuss that question, however, or consider just how far the decisions have gone. The Solicitor General candidly agreed that the Government should not and would not rely upon this

ground, if it had taken a position inconsistent with it in the earlier case, and it seems to us plain that it did so and expressly deprecated any reference in that case to the rights under the Main Line Grant.

It appears that the bill in 168 U. S. 1, was brought or at least tried as a bill to quiet title against claims of the Southern Pacific under the branch line grant, and that during the litigation on that question there was pending another bill to quiet title under the Main Line Grant, being the one before this court in 183 U. S. 519. It is said, and we do not understand it to be disputed, that in oral argument and printed brief before the Circuit Court of Appeals the counsel for the Government repeated that title under the Main Line Grant was not involved, and that if that question ever arose there would be pleadings and proof upon it. The court in its decision, 168 U. S. 1, 29, stated the claim of the Southern Pacific to be under the act of 1871 (the branch line grant). Again, in the case between the same parties in 183 U. S. 519, 533, the court said that it was not adjudged in the former cases that the Southern Pacific had no title to any real estate by virtue of the act of 1866; and although it also said that of course the decrees were conclusive as to the title to the property involved in them, still in view of the conduct and disposition of the cause as to the branch line grant, if for no other reason, we think that it would be inequitable for the United States now to rely upon the decree in that cause as conclusive upon the parties in this. It follows that as the present decision was in favor of the United States with regard to the last-mentioned lands it must be reversed, (No. 129), and that otherwise (No. 128) it stands affirmed.

*Decree reversed.*