**KRUG, Secretary of the Interior, et al. v. SANTA FE PAC. R. CO. et al.**

No. 9167.

United States Court of Appeals District of Columbia.

Argued March 27, 1946.

Decided Oct. 21, 1946.

Mr. Ernest F. Hom, Principal Attorney, Office of the Solicitor, Department of the Interior, of Washington, D. C., with whom Messrs. Warner W. Gardner, Solicitor, and Harry M. Edelstein, Assistant Solicitor, Department of the Interior, both of Washington, D. C., were on the brief, for appellants. Mr. Sidney B. Jacoby, Senior Attorney, Office of the Solicitor, of Chicago, Ill., also entered an appearance for appellants.

Mr. Lawrence Cake, of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and EDGERTON and CLARK, Associate Justices.

GRONER, C. J.

This is an appeal from a final judgment of the District Court, granting plaintiffs' and denying defendants' motions for summary judgment. Plaintiffs, Santa Fe Railroad Company and Aztec Land and Cattle Company (hereinafter called "Santa Fe" and "Aztec," respectively), brought this action in the District Court for an injunction restraining defendants, Secretary of the Interior and Commissioner of the General Land Office, from rejecting plaintiffs' application for a patent to some 98,000 acres of land in the State of Arizona. A condensed statement of the facts follows:

Santa Fe is the successor in interest of Atlantic and Pacific Railroad Company. Congress, by Act of July 27, 1866, 14 Stat. 292, granted to the latter the odd numbered sections of public land on either side of its projected line of railroad within certain limits, known as "place limits." The Act granted also the right to select within designated limits known as "indemnity limits" sufficient lands to make up any deficiency arising from homestead preemptions, etc., of lands within the place limits. On February 3, 1886, while the land within the indemnity limits was unsurveyed, Atlantic and Pacific contracted to sell to Aztec certain lands within both the place and indemnity limits, and in 1886 and again in 1894 conveyed as much of the land as was then surveyed. In 1905 Santa Fe, as successor of Atlantic and Pacific, quit-claimed to Aztec the remainder of the land cov-

ered by the original contract, including the land here in issue. But in 1898 these latter lands had been withdrawn by Executive Order as a forest reserve.

On September 18, 1940, Congress enacted and the President approved the Transportation Act of 1940.[1] The purpose of the Act was to relinquish the existing right of the United States to reduced rates on property carried for the Government by land grant railroads and in return to secure the release by the railroads of all their existing rights to lands or interest in lands granted to them, but as to which title had not then passed. The Act, however, provided:

"Nothing in this section shall be construed * * * to prevent the issuance of patents confirming the title to such lands as the Secretary of the Interior shall find have been heretofore sold by any such carrier to an innocent purchaser for value * * *."

On December 18, 1940, Santa Fe made and filed the release required by the Act, reserving therefrom all lands sold to innocent purchasers for value prior to September 18, 1940. Together with this release Santa Fe filed a full description of the lands so sold, including those sold to Aztec. On June 26, 1942, Santa Fe filed selections in the form prescribed by the Secretary of Interior of the land previously sold to Aztec. The Commissioner of the General Land Office rejected the application on the ground that the land sought to be patented had not been ascertained and identified prior to the filing by the Railroad of the release and that accordingly Aztec was not protected under the saving clause of the Act. The decision of the Commissioner was affirmed by the Secretary and rehearing was denied.

On March 16, 1944, Santa Fe filed its complaint in the present suit, seeking an injunction restraining the Secretary from rejecting the selection of lands and the application for the patent and praying for a writ in the nature of mandamus directing him to proceed to determine the right of Santa Fe to have patented the lands in question, notwithstanding the release. The Secretary and his codefendants, without then or thereafter answering the complaint, filed the following motion for summary judgment:

"The defendants move the court for a summary judgment in their favor because there is no genuine issue as to any material fact and the defendants are entitled to judgment as a matter of law. * * *"

Thereupon Santa Fe likewise filed a motion for summary judgment which recited:

"The plaintiffs move the Court for a summary judgment in their favor on the ground that the pleadings filed herein, namely (1) the complaint, and (2) the defendants' motion for summary judgment and exhibits 1–5 attached thereto, show that there is no genuine issue as to any material fact and the plaintiffs are entitled to judgment granting the relief prayed, as a matter of law." [2]

The Secretary later, but before hearing, filed the affidavit of the then Assistant Secretary as follows:

"* * *

"2. In its decisions of January 8, 1944, and February 8, 1944, the Department had no occasion to pass upon and made no determination as to the truth or falsity of the allegation of paragraph 11 of the complaint that the losses in place lands have exceeded the surveyed lands within the indemnity limits of the grant at all times since before August 17, 1898, or the allegations of paragraph 20 of the complaint that the lands in question are 'non-mineral public lands, not reserved, sold, granted, or otherwise lawfully appropriated, and free from preemption or other claims or rights' and that plaintiff Aztec Land and Cattle Company, Ltd., is an innocent purchaser for value of such lands, for the reason that the Department was of the opinion that the release filed by the plaintiff, Santa Fe Pacific Railroad Company

---

[1] 54 Stat. 954, 49 U.S.C.A. § 65.

[2] The pleadings referred to in the motion were copies of the Secretary's opinion rejecting plaintiff's application, the Secretary's refusal to reconsider, and copies of plaintiff's contract of sale and quit-claim deed to Aztec, and have no relevancy to the question under consideration.

on December 18, 1940, pursuant to the Transportation Act of 1940, without more, barred plaintiffs' right to the land in question. Defendants are consequently without knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, deny the same."

In reaching our conclusion we have assumed that this affidavit does not constitute "a pleading in answer" to the complaint. But even if we are wrong in this respect, the result we reach would be the same.

The case was then submitted on complaint, motion and cross motion and, after argument, the court denied the Secretary's motion, granted that of Santa Fe, and entered final judgment accordingly.

On this appeal the first question for decision is whether on these pleadings the court might properly enter a final decree.

As we have indicated in the foregoing statement of facts, Santa Fe's case as shown in its complaint was predicated on the facts—(1) that its sale to Aztec was in all respects bona fide and to an innocent purchaser for value, and (2) that on the date of the sale and at all times thereafter the losses in the place limits of the grant exceeded the surveyed land within the indemnity limits available for selection, and therefore there had been a deficiency in the grant since some time prior to August 17, 1898 (the time of withdrawal for forest reserve), which has at no time been less than one hundred thousand acres. To this pleading the Secretary, as we have pointed out, filed no answer.

In this state of the record we are of opinion that even though the motions of both plaintiffs and defendants in precise words state that "there is no genuine issue as to any material fact," the judgment was improperly entered for Santa Fe. Rule 56(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, authorizing the court to grant summary judgment for the claimant is conditioned upon the filing of a "pleading in answer." The language of the Rule is: "A party seeking to recover upon a claim (i. e. the plaintiff) * * * may, at any time *after the pleading in answer thereto has been served,* move * * * for a summary

judgment." (Italics supplied.) The defendant, on the other hand, may, by the terms of the Rule, *"at any time,* move * * * for a summary judgment in his favor * * *."  (Italics supplied.) If the language of Rule 56(a) is to be taken literally, obviously the motion of the plaintiffs in this case was premature; and that it should be taken literally has been decided by all the courts in which the question has arisen so far as we know. See: Peoples Bank v. Federal Reserve Bank of San Francisco, D.C., 58 F.Supp. 25; Viking Press v. Goldman, D.C., 38 F.Supp. 1014; Latrobe Electric Steel Co. v. Fansteel Metallurgical Corporation, D.C., 55 F.Supp. 402. See also—3 Moore's Federal Practice (1938) 3181, and 1945 Supp. 174. In each of the cases cited it was held that plaintiff's motion for summary judgment filed after the defendant had moved for summary judgment, but before the defendant had filed an answer, did not accord with the provisions of the Rule. Counsel for Santa Fe cite Steiner v. United States, D.C., 36 F.Supp. 496, and Associated Press v. United States, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013, as tending to show that there may be exceptional cases in which the Rule does not apply. But be that as it may, there exists nothing here to make this case exceptional and, moreover, in both the cited cases answers had been filed by the defendant. In the recent case of Walling v. Richmond Screw Anchor Co., 154 F.2d 780, the Second Circuit construed the Rule to afford the defendant an opportunity, after motion and cross motion for summary judgment, to show that there exists a genuine issue as to material facts. The reason for this is that the mere fact that both the plaintiff and defendant move for summary judgment does not assure that there is no issue of material fact to be resolved. At most, the defendant asserts by virtue of his motion that, accepting his legal theory, no issue of fact is presented. Hence it follows that if a differing legal theory of the plaintiff be accepted, the defendant should nevertheless be accorded an opportunity to show that there exists a dispute of fact essential to the complainant's case. That is this case. The Secretary, the defending party, on his motion for summary

judgment, argued—and now insists—that the existence of a deficiency of indemnity land to make up losses in place is not material, since without selection Santa Fe had no interest in the land which could have been conveyed to Aztec. But the Secretary asserted that if Santa Fe's theory—that selection is unnecessary when a deficiency exists—is correct, he was not prepared to admit the fact of deficiency. In the face of such a dispute of fact, summary judgment was not available to Santa Fe. See: Wyant v. Crittenden, 72 App.D.C. 163, 113 F.2d 170, and Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130. From this it follows that the court erred in granting Santa Fe's (plaintiff's) motion for judgment.

■ This then brings us to the further question whether the court was correct in denying the Secretary's motion. As we have seen, it was the contention of the Secretary that irrespective of the existence of a deficiency, Santa Fe could have acquired no interest in the lands conveyed to Aztec without a formal selection. If this is correct as a matter of law, obviously, the Secretary's motion for judgment should have been granted. If it is incorrect, equally obviously, it should have been—as it was —denied. We are of opinion that the District Court was right. While it is true that, as a general rule, selection is necessary to vest any right to specific indemnity land in the grantee, the Supreme Court has long recognized an exception where there is a deficiency of indemnity land to satisfy losses in place. This, we think, is decided in United States v. Northern Pacific R. R. Co., 256 U.S. 51, 65, 41 S.Ct. 439, 442, 65 L.Ed. 825, where the Court said:

"While it often has been said that under such a grant no right attaches to any specific land within the indemnity limits until it is selected, an examination of the cases will show that this general rule never has been applied as between the Government and the grantee where the lands available for indemnity were not sufficient for the purpose. Its only application has been

where either the rights of settlers were involved, or the lands available for indemnity exceeded the losses, thereby making it essential that there be a selection and identification of the particular lands sought to be taken. This distinction is illustrated in St. Paul & Pacific R. Co. v. Northern Pacific R. R. Co., 139 U.S. 1, 11 S.Ct. 389, 35 L.Ed. 77. The question there presented was whether there was any need for a selection where no right of a settler was involved and the lands available for indemnity were not sufficient to supply the losses. By reason of this insufficiency it was ruled that the lands in the indemnity limits necessarily were appropriated to satisfy the losses and that no selection was required."

See also: United States v. Southern Pacific R. Co., 223 U.S. 565, 32 S.Ct. 326, 56 L.Ed. 553; United States v. Colton Marble & Lime Co., 146 U.S. 615, 13 S.Ct. 163, 36 L.Ed. 1104.

■ Nor does the fact that the particular lands were withdrawn for inclusion in a national forest reserve operate to defeat the rights Santa Fe may have had in the lands. United States v. Northern Pac. R. Co., 311 U.S. 317, 61 S.Ct. 264, 85 L.Ed. 210. Accordingly, we think that, in the circumstances described in the complaint,—if proved on the trial—the lands here involved are identified without the formality of selection, as the result of which the right of Santa Fe attached and the issuance of patents became a duty of the Secretary of the Interior. See St. Paul & Pacific R. Co. v. Northern Pacific R. Co., 139 U.S. 1, 11 S.Ct. 389, 35 L.Ed. 77.

From the foregoing it becomes necessary to affirm the decision of the trial court overruling the Secretary's motion for judgment, and at the same time to reverse the final judgment in favor of Santa Fe and remand the case for trial on the merits, if and when an answer is filed by the Secretary.

Reversed in part; affirmed in part; and remanded for further proceedings in accordance with this opinion.